Please all rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd Judicial District is now open in pursuit of adjournment. The Honorable Susan F. Hutchinson is presiding. Please be seated. In this case of Doctrine 2-14-2557, the people of the State of Illinois present at the lead be Juan M. Garcia-Guerrero, Defendant, Appellant. Attorney Ron McCaffrey, Defendant, Appellant. Attorney Mr. Paul J. Clayton. Attorney Ron McCaffrey, Defendant, Appellate. Attorney Mr. David A. Crenshaw. Good morning, gentlemen. Good morning, guys. Good morning, Mr. Glazer. May it please the Court. Juan Garcia-Guerrero was convicted of two counts of predatory criminal sexual assault, including count three, which alleged sexual penetration by means of penis and the plaintiff's anus. Sexual penetration is defined in the law as any contact over slight between the sex organ of one person and the, as charged here, the anus of another. Thus, the State had to prove here that the defendant's penis made contact with the anus of K.H., the complainant. But as shown by the jury's question to the judge, the jury did not know the meaning of anus, that the jury might have been confused about that essential element to the charge. It's understandable due to the testimony that was presented on that subject at the trial. Isn't that a commonly understood term, counsel? To you or I, perhaps. But as presented by the complainant in this case, it became not so commonly understood. In her initial complaint to her first grade teacher that morning in August, she said she didn't want to go home with the defendant because the defendant was touching her butt cheeks. Didn't mention with what. Now, how proficient is this young girl in English? Well, I guess she spoke both English and Spanish while she was in the first grade. Two years, two and a half years went by between the complaint and the trial, and she testified in English. So her English got better. All right, but she spoke to Officer Rivera in Spanish? She spoke to Officer Rivera in Spanish. In fact, the video that came with the record has her in Spanish. There's an English translation that's part of the record. Did she use any Spanish terms like pompous on the stand? On the stand? I don't believe on the stand. I think it was in the – well, it definitely was on the anatomical drawing where she labeled, circled the genital areas of both the male and female dolls or the diagrams, front and back, and labeled them all pompous, which the Spanish-speaking detective, lieutenant, described to the jury as Spanish word for buttocks. But she – but he also said because she had circled both front and back, he called it front butt and back butt or something like that? That I don't recall, but I know that on the paper it says pompous. And at trial, she said that – again, first she said he touched her butt, then he touched her buttcheeks, doesn't say what. Finally, at trial, she testified that once he tried to enter her or penetrate her buttcheeks with his penis and she wouldn't let him. So that was some more buttcheeks there. Did anybody ever with her use the word anus or what children might use, and we've seen in other cases? You know, almost every case has a unique term that we've never heard before. And I don't know if they ever used the word anus in the direct exam or cross-exam of the girl at trial. If they did, they may have, but I don't recall her ever using the words he tried to penetrate my anus. That simply didn't exist. Plus, we have both sides enclosing arguments in the jury, arguing about this essential element, the state saying, well, all it has to be is contact over a slight with the anus, and you have the defense counsel telling the jury, no, he's charged with penetrating the anus, and you heard no testimony about that. So the question here is whether, so therefore it was understandable for the jury to send the judge a question saying, in terms of this trial, is anus the equivalent of buttcheeks or pompous? The question here is whether that question was one of fact or one of law. If it's a question of law, then the judge's refusal to offer the answer proposed by the defense counsel below, no, was an abuse of discretion and justifies reversing the conviction on that count. Did you, was the exact question the one that you just paraphrased? The exact question was, if page, well, page 8 of my brief on facts, the question is in C176 of the record. For the purpose of this trial, is the, quote, anus equivalent to, quote, buttcheeks and, quote, or pompous, quote, unquote? So that was the exact question. Now, Child's, in Child's case, are a three-part analysis for how, when a judge should answer a jury question. Each point's satisfied here. First, was it an explicit question? Well, no pun intended, it was explicit on a couple of levels. Two, about which the jury evidenced some doubt or confusion. Well, obviously, if they weren't confused, they wouldn't have sent the question out and chose confusion from the question. On a point of law, and that's, the answer to that is yes as well. Whether a body part here described by the witness as pompous or buttcheeks is considered an anus under the law, which must, which it must be under the statutes and jury instructions, the anus. Is the question of statutory interpretation a question of law, which the judge should answer? Just because the question asked for a definition of a noun didn't make it a question of fact. The closest analog I could find is a case that's actually cited in the Peeble v. Lambert case, which is in our briefs, a case from this court called Peeble v. Kamai, where the defendant was on trial for DUI, and under the facts of the case, the jury was confused about what alcohol meant. I guess he was using inhalant, which involves some chemical form of alcohol, which is different from whatever alcohol we drink, ethyl alcohol, whatever it might be. And the jury asked the judge there, what does alcohol mean, define alcohol? And this court said the judge should answer that question. The anus here is the equivalent of alcohol in Kamai. But wouldn't this be much easier if the jury had asked simply for the definition of anus and then themselves made the determination as to whether or not the anus was the equivalent of the buttocks? I mean, isn't this where the problem comes from? Well, we're here looking at the action of the judge in responding to the question, not did the jury commit perverse behavior. Well, in analyzing what the judge did. In other words, maybe, I mean, because of the way the question was worded, isn't it logical to think that what the judge thought was that he would be taking the job of the jury away from them if he gave that answer? Wasn't it up to the jury to make that determination? It was up to the jury to determine whether there was penetration of the anus. It was answering this question, is anus the same as, or is anus poppous or buttcheeks? The answer, no, does not direct the verdict. The jury could still consider, well, what did the victim say? Did she say, did she offer testimony that would enable us to make a conclusion that anus was penetrated? Saying that poppous is not anus, buttcheeks are not anus is not directing their verdicts, giving the ultimate question to the jury. The judge is not answering that. Now, in terms of a definition of anus, the state in their brief offers a really good definition on page 2 of their brief, which is to say it's the hole in the digestive tract. An answer like that would not have directed verdict to the defense. Well, but he didn't, the jury didn't even ask that question. They asked, are they the same? That's a yes or no. Yeah, which is true, yeah. And then we don't have to define, because I don't think they were actually asking for a definition. They were asking if they're the same. The defense counsel did offer the judge, I think, two alternatives. One is to answer no or to provide for an explanation to define what anus is. So either answer, no or anus is whatever, would have been fine. It would not have directed the verdict. This issue was well preserved. In view of the conflicting evidence and the specifics of the charge, it's not harmless by any means. Did this issue or was this issue complicated by the state's argument, possibly the closing argument? Well, I think the state's closing argument and the defense response to that brought the issue to the forefront for the jury to consider. I don't think, as much as I don't like the state's closing arguments in most cases, there's really nothing untoward about trying to argue to the jury that any contact, however slight, is sufficient to prove the charge. The prosecutor did restate what was already stated in the jury instructions. The jury instructions said slight contact with the anus. I'm sorry. I was just curious in that the state seemed to indicate that, and again, the size of the defendant versus the size of the child, it wouldn't take much to penetrate or come in contact with, but really didn't say much more. No. Fine. That's all well and good. That doesn't resolve the question of could the jury find there would have been penetration as charged in the indictment, as charged in the instructions. And without having their question about what does anus mean resolved, they couldn't come to a clear and a reliable verdict. Again, this came two hours after they started deliberating. This wasn't a quick, quickie quick question. It was about two hours before they sent the question, about two hours afterwards before they delivered the verdict. So this jury was giving, trying to give some careful examination of the verdicts. In fact, they returned one acquittal as far as the three counts were concerned. So therefore, we asked, respectfully asked this court to reverse the judgment on count three, remand the case for the trial of that count, and also pursuant to argument two, as the state has conceded, we asked this court to vacate the public defender, which was improperly defeated. The interesting thing about the acquittal, she did talk about contact with her, instead of vagina, obviously her pee pee. And they acquitted on that one. Does that, to you, indicate any real confusion? It might be. It might be jury lenity. It might be, you know, again, how can we figure out how juries accent times. I think they just tried to gauge the complainant's testimony as well as they could, and just found her explanation of vaginal penetration not sufficient to merit a conviction. Thank you. Mr. Bernard. Oops. Okay, that's state property. Yeah. Can't pay for it. I think it's particularly appropriate today. I don't know if your honor is new, but it's Be Kind to Lawyers Day today. Officially, so keep that in mind. Not going to help my husband any. The trial court didn't abuse its discretion in this case. I mean, here is a common definition that I think any adult pretty much knows what a anus is. I think if the question maybe had been, you know, a little bit different, maybe the judge needed to answer, but I don't think so. I think if the judge had answered this, we would have had the other way around. Defendant complaining that the judge directed the jury into what it believed, you know, was penetration. But the defendant's counsel, I'm assuming with the knowledge of defendant, offered two alternatives. So, you know, he wouldn't be able, I mean, unless he tried ineffective assistance of counsel, which I think would be a little iffy here. I mean, he offered the answer and a good reason for the answer. Correct. But again, it's a commonly known term. You know, I put my brief. It's not like a legal term knowingly. It's a term that pretty much everyone knows. And I think there was maybe a chance that the judge, any answer he decided to give might have an effect on the jury that was not good. And I think he left it better left alone. Well, if the only place that the jury heard the word Pompeys was from the videotape that was played for them, would you concede that it is possible that the jury was having problems understanding it was a language issue? Is Pompeys this or is it that or is it this? Well, I think there was testimony and you would think that the jury heard that testimony, that Pompeys was testified as it means but or but acts in Spanish. So you would hope that they heard that. And I think they did. I think the fact that the victim testified at trial and specifically stated that, you know, he tried to open her butt cheeks, but she squeezed them together to prevent his penis from getting between them. And that she further stated she could feel his penis trying to go deeper. I mean, obviously, there was more than just a slight touch there. And this evidence was so clear, whether the judge answered that question or not, I don't think there's any doubt that the jury would have found that this defendant penetrated her anus. Well, in fact, didn't she say in the testimony at trial that while he, the question was never asked, did he touch her anus? Did his penis touch her anus? And would an eight-year-old girl understand that is another question. But she said that if anything, he went beyond her anus to the charge that he's been acquitted on to her to her vagina or her peepee area. Yeah, again, I can't explain it because after reading the record and the testimony, it was difficult to really logically, irrationally know why the jury decided to deny that claim or find not guilty on that claim. And I cannot, just like defense counsel, I can't, I do not understand that either. I could see, though, that there was maybe some confusion there between maybe they thought Pompous meant vagina. I don't know. And I just, you know, I cannot, I can't fathom. You say in one very early on in your brief that while the term anus is commonly understood, and we've talked about that, you also say it has no legal significance, special legal significance. Then why did they charge that offense? I mean, they charged a penetration of the anus. It's, I think that's pretty significant, don't you? Well, of course. Yeah, I mean, the crime is significant. And, but just as vagina has no special legal significance, anus does not, or mouth. I mean, everyone knows those terms and those are commonly known terms, and it's the only way we can charge those. But that is the, and again, you find yourself using words you don't prefer to use in this case, that is the point of reference, the anus. So it is a legal, it's a legal term in this respect. It doesn't say that he penetrated her kneecap. The issue is he penetrated her anus. So if they don't know what that means in terms of her testimony, why is it not appropriate to answer? Well, again, you know, and I guess we just have a definitional difference here. I think it's so common that we don't get into it. Like, it's not like knowledge, a legal term, knowledge. It's not like a lawyer or a common person would have a different definition of anus. Whether we're a lay person or jury person with no legal training or a lawyer, we have that same definition. Again, a legal term, a legal term of art, I think that's different. And then we do have, you know, the responsibility, the judge has a responsibility to make sure that term has been explained sufficiently if the jury has a question on that. Doesn't the very fact that they're asking the question, though, indicate that at least to them it's not clear? Again, I can't go into the mind here, Honor, and I, there could have been some argument there, but I think 12 adults, I think pretty much the majority, at least all, 11 of them knew what an anus was and wasn't complaining about it. Who knows why a jury goes, maybe they sent this to a letter because there was one person, hey, you know, deciding that they had to know the exact definition of it. Well, since it is the state's burden to prove this, shouldn't we also look at this confusion that you've mentioned, the confusion that Mr. Glazer's mentioned? The officer, Rivera, takes that word and takes the anatomical drawings, she uses the word pompies, and she uses it on the front side of the anatomical drawing and on the back side of the person. And he does a translation, if I recall, it's either front butt or front buttocks and back buttocks. Shouldn't they then, in either evidence or otherwise, clarify what that means? Well, I think it was certainly clarified by the victim in her own testimony. As I, you know, stated before, her testimony clearly shows that, and maybe it doesn't clearly, now I can't specifically recollect, but maybe it doesn't specifically show that there was penetration in the vagina, but there certainly was this testimony here that I quote that there was a penetration in the anus. Well, there was, in English, there was in her testimony of the butt cheeks, but does she say that it actually ever touched her anus? She doesn't use the term anus. Or where she goes poop, or where she goes potty, or where she needs her mom to help her wipe, anything like that. No, she doesn't. But she does say between her cheeks, which I think is descriptive enough for any adult. Well, it's descriptive enough really isn't the issue. You know, I think that testimony right there, though, it is so clear from an 8-year-old in English that I just don't see how a jury could not have convicted her of this crime. Instructions are not answering this. And certainly I do not think that the trial court abuses discretion given that testimony. If there are no other questions, Janet. Thank you very much. Mr. Glaser. Your Honor, whether a term is commonly understood or not isn't the sine qua non of whether a judge should answer the question. We want our juries to understand the concepts that are before them. The word originate is not so particularly legalistic that it requires definition. Most people know what originate means. But in the Charles Landner case, this court granted Mr. Landner a new trial because the judge wouldn't provide a definition of the word originate for the jury. The word alcohol. Everyone knows what alcohol is, but it can mean this court granted a new trial because the jury didn't know what alcohol meant. Counsel says what if one, okay, so maybe one juror out of 12 didn't know. Well, we don't know it's one. Maybe it was 11. Maybe it was all 12 didn't know what anus and pampus and buttocks because the state failed in their burden to prove the element sufficiently for the jury to understand what part of the body are we talking about. Maybe the lesson to draw from this case is that lawyers got a better job preparing and talking to their child witnesses so that everyone knows what the child is talking about. We want to accommodate the jurors. For example, in this case, two hours after setting up this note, the jury sends a note saying can we see the DVD again of the girl's statement to the officer. And both sides said sure. Well, certainly the state didn't object. And the judge says yeah, let us see it again. We want to make sure the jury had a full understanding of what the facts of the law was before they reach their verdict. And that's where she used the term pampus. And although there was a translation verified, I guess, by Officer Rivera, that that's now when that verification happens, is that his understanding of what she said or what she said? Or is that another issue? The question is what does pampus mean? And he said it meant buttocks. And, you know, if you go to the Spanish English Dictionary, you'll find the same term. And there is another term for anus in Spanish. There may well be. I haven't had an occasion to use it, so I couldn't tell you. But, you know, my point with the DVD is that to say, well, you know, we don't know how on earth the jury could have been so confused. They were. We deal with the cards we're given. And if the jury is confused, it's the obligation of the judge to try to rectify that confusion, try to resolve the confusion. And here the judge could have done it very easily by answering no and let the jury come to a more deliberative and more accurate verdict. And it could still have been a guilty. That's possible. But at least there's an answer. Correct. The answer would not have directed the verdict, and that's one of the big factors in reviewing the discretion. Thank you. Thank you. Thank you, gentlemen, for your argument this morning. We will take the matter under advisement. We will render a decision in due course, and we will do our best to be kind to lawyers today.